IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

_____
                                        )
STATE FARM FIRE AND CASUALTY            )
COMPANY,                                )
                                        )
                    Plaintiff,          )
                                        )
v.                                      ) Civ. No. 15-00101 ACK-KSC
                                        )
GP WEST, INC. and AIR                   )
CONDITIONING OF MAUI, INC.,             )
                                        )
                    Defendants.         )
_____)

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

For the reasons set forth below, the Court GRANTS Plaintiff State Farm Fire and Casualty Company's Motion for Summary Judgment, ECF No. 31, and DENIES Defendant GP West, Inc.'s Cross-Motion for Partial Summary Judgment Re Duty to Defend, ECF No. 36, to which Defendant Air Conditioning of Maui, Inc. has filed a Joinder, ECF No. 38.

## PROCEDURAL BACKGROUND

On September 25, 2015, Plaintiff State Farm Fire and Casualty Company ("State Farm" or "Plaintiff") filed the operative First Amended Complaint for Declaratory Judgment ("Complaint") asking this Court to determine, as a matter of law, that State Farm has no duty to defend or indemnify Defendants GP West, Inc. ("GP West") or Air Conditioning of Maui, Inc. ("AC Maui," and collectively with GP West,

- 1 -

"Defendants") for claims asserted against Defendants in an underlying lawsuit.   Complaint ¶ 5, ECF No. 16.

On September 28, 2015, Defendant GP West filed an Answer to the Complaint, as well as a Counterclaim Against Plaintiff ("Counterclaim").   ECF No. 19.   In its Counterclaim, GP West seeks declarations that State Farm has a duty to both defend and indemnify GP West for the underlying lawsuit. Counterclaim ¶¶ 42, 47.   GP West also seeks a declaration that State Farm breached an implied covenant of good faith and fair dealing by rejecting GP West's tender to State Farm of the defense of the underlying lawsuit.   Id. ¶¶ 54-55.

On February 17, 2016, State Farm filed a Motion for Summary Judgment ("Pl.'s MSJ"), ECF No. 31, along with a Separate Concise Statement in Support of Motion for Summary Judgment ("Pl.'s CSF"), ECF No. 32.   In its Motion, State Farm seeks summary judgment on both its Complaint and GP West's Counterclaim, alleging that the claims for which Defendants seek defense and indemnity do not arise from an "occurrence," as required for coverage under the relevant State Farm policies; that coverage is precluded by one or more of the policies' exclusions; and that "any coverage afforded GP West as an additional insured under [the relevant policy] is excess over the coverage afforded under GP West's own policy with Nationwide."   Pl.'s MSJ at 42.   Additionally, State Farm seeks

summary judgment on GP West's Counterclaim that State Farm breached the implied covenant of good faith and fair dealing. Id. at 38.

On April 19, 2016, GP West filed a Cross-Motion for Partial Summary Judgment Re Duty to Defend and Opposition to Plaintiff State Farm's Motion for Summary Judgment ("GPW's MSJ"), ECF No. 36, along with a Separate Concise Statement in Support of Its Cross-Motion for Partial Summary Judgment ("GPW's CSF"), ECF No. 37. GP West argues it is entitled to summary judgment on State Farm's duty to defend the underlying lawsuit because it is possible that certain allegations in the underlying complaint are covered by State Farm's policy and that no exclusions preclude coverage for the underlying claims. GPW's MSJ at 1, 27. It further argues that State Farm's Motion for Summary Judgment on its duty to indemnify should be denied as premature. Id. at 2. Finally, it argues that the Court should deny State Farm's Motion with regards to GP West's Counterclaim, which alleges that State Farm breached the covenant of good faith and fair dealing when it relied on GP West's Nationwide Mutual Insurance Company ("Nationwide") insurance policy to deny GP West a defense in the underlying lawsuit. Id. at 33.

That same day, AC Maui filed a Joinder to GP West's Cross-Motion for Partial Summary Judgment Re Duty to Defend and

Opposition to Plaintiff State Farm's Motion for Summary Judgment and Additional Memorandum in Opposition.  ECF No. 38.

On April 26, 2016, State Farm filed a Combined Reply Memorandum in Support of Its Motion for Summary Judgment and Memorandum in Opposition to Defendant GP West's Cross-Motion for Summary Judgment and Defendant AC Maui's Joinder Therein ("Pl.'s Reply").  ECF No. 42.  On May 3, 2016, GP West filed a Reply Memorandum in Support of Its Cross-Motion for Partial Summary Judgment Re Duty to Defend ("GPW's Reply").  ECF No. 43.

The Court held a hearing on June 6, 2016 regarding the instant Motions.

## FACTUAL BACKGROUND

This case arises out of a lawsuit pending in the Circuit Court of the Second Circuit, State of Hawaii alleging, *inter alia*, breach of contract by Defendants for installation of a defective HVAC system in the underlying plaintiffs' building.  See Kot LLC v. GP West, Inc., Civ. No. 14-1-0352(2), Circuit Court of the Second Circuit, State of Hawaii.  Defendants having tendered defense of the claims alleged in that lawsuit to State Farm, State Farm now seeks a binding declaration that it has no duty to defend or indemnify Defendants for those claims or any other claims that may arise out of the subject matter of the underlying lawsuit.

## I.   The Underlying Lawsuit

On January 30, 2015, Kot LLC, Hawaii Research and Development Group, Ltd. dba Maui Veterinary Clinic ("MVC"), and Dr. Wayne S. Kot, DVM filed a first amended complaint in the Circuit Court of the Second Circuit, State of Hawaii against GP West, AC Maui, and Nordyne, LLC ("Nordyne").   Harada-Stone Decl. Ex. 1, ECF No. 32-3.   Kot LLC is the owner of a building referred to as the "MVC Building," which MVC leases from Kot LLC for use as a veterinary clinic.   Id. ¶¶ 1-2, 9.   Dr. Kot is a licensed veterinarian doing business in the MVC Building.   Id. ¶ 3.

The underlying complaint alleges that on or about October 15, 2008, Kot LLC, as owner, and GP West, as general contractor, entered into a contract for the construction of the MVC Building.   Id. ¶ 9.   AC Maui was the HVAC subcontractor for the construction project, and in that capacity "designed, sized, and priced an HVAC system for the MVC Building consisting of the installation of seven . . . central air conditioning units." Id. ¶¶ 10-11.   The air conditioning units and air handlers were manufactured by Nordyne.   Id. ¶ 15.   According to the complaint, defendants were aware that the HVAC system was intended for use in a veterinary clinic used for the hospitalization and housing of animals, as well as for surgeries performed by Dr. Kot.   Id. ¶ 16.

The complaint further alleges that after the MVC Building was substantially complete, the HVAC system experienced multiple equipment defects and mechanical breakdowns and did not properly dehumidify the building. Id. ¶¶ 18-19. The underlying plaintiffs contend that "[t]he HVAC system has experienced and continues to experience an excessive number of mechanical failures." Id. ¶ 20.

The underlying plaintiffs also allege that they properly filed claims under the one-year warranty provided by GP West, which in turn alerted AC Maui to the mechanical issues. Id. ¶¶ 21-22. However, plaintiffs assert that defendants failed to disclose that the HVAC equipment installed in the MVC Building had not been purchased through the manufacturer's authorized distributor in Hawaii, and that GP West and AC Maui were therefore unable to timely obtain replacement parts to repair the system. Id. ¶¶ 24-25.

Relatedly, plaintiffs allege that defendants "affirmatively misrepresented Defendant Nordyne's warranty process," and that plaintiffs "were repeatedly billed for parts and labor that should have been covered under Defendant Nordyne's warranty." Id. ¶¶ 26-27.

The complaint states that "[i]n May of 2013, Defendants finally conceded that the HVAC system was defective for all purposes and needed to be completely redesigned and

replaced." Id. ¶ 36.  According to an engineering report plaintiffs obtained, "[t]he original design and installation of the system and execution of some or all of the 'warranty repair work' on the system was deficient and/or defective"; "[t]he HVAC system as designed and installed was not appropriate or adequate for the purposes of the MVC Building"; and "[c]ertain components of the specified HVAC system[] were never installed or were improperly installed." Id. ¶ 41.

The complaint further alleges that the defective HVAC system caused a substantial amount of damage to property not part of the HVAC system itself, including the development of mold in the clinic, the collapse of the clinic's sub-ceiling, rust and corrosion to metal door frames and fixtures, and damage and electrical short-outs to light fixtures. Id. ¶ 43.

Plaintiffs in the underlying lawsuit assert claims for breach of contract, breach of express warranty, breach of implied warranties, negligence, and intentional or negligent misrepresentation. Id. ¶¶ 45-70.  They seek consequential, special, and general damages, as well as treble and/or punitive damages. Id. at 12.

## II.  State Farm's Insurance Policies

State Farm issued to AC Maui six insurance policies for successive one-year periods from April 1, 2009 to April 1, 2015.  Pl.'s CSF ¶ 11.  The first four policies utilized State

- 7 -

Farm's Contractors Policy Special Form 3 – FP-6100 ("Contractors Policies"), while the last two were written using State Farm's Businessowners Coverage Form CMP-4100 ("Businessowners Policies").  Id. ¶ 17; Harada-Stone Decl. Exs. 2-7.

### a. Contractors Policy Special Form 3 - FP-6100

The Contractors Policies State Farm issued to AC Maui state that State Farm "will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury, property damage, personal injury or advertising injury to which this insurance applies."  Pl.'s CSF ¶ 12.  Further, the insurance applies only to property damage "caused by an occurrence which takes place in the coverage territory during the policy period."  Id.

The policies also contain a "Right and Duty to Defend" provision, which states:

> We will have the right and duty to defend any claim or suit seeking damages payable under this policy even though the allegations of the suit may be groundless, false or fraudulent.  The amount we will pay for damages is limited as described in the Limits of Insurance .  .  .  .  We may investigate and settle any claim or suit at our discretion.  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements or medical expenses.

Id.

The "Definitions" section of the policies defines "you" and "your" as referring to the named insured, AC Maui. Harada-Stone Decl. Ex. 8 at 1.  Other relevant definitions state:

12. **occurrence** means:

a. an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury or property damage; or

b. the commission of an offense, or a series of similar or related offenses, which results in personal injury or advertising injury.

For purposes of this definition, bodily injury or property damage resulting from the use of reasonable force to protect persons or property will be considered an accident;

. . .

15. **products-completed operations hazard**:

a. includes all bodily injury and property damage arising out of your product or your work except products that are still in your physical possession or work that has not yet been completed or abandoned. The bodily injury or property damage must occur away from premises you own or rent unless your business includes the selling, handling or distribution of your product for consumption on premises you own or rent.

Your work will be deemed completed at the earliest of the following times:

(1) when all of the work called for in your contract has been completed;

(2) when all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

(3) when that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise compete, will be treated as completed;

. . .

16. **property damage** means:

a. physical injury to or destruction of tangible property, including all resulting loss of use of that property; or

b. loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of other tangible property;

. . .

21.  **your product**:

   a. means:

      (1)  any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) you;

         (b) others trading under your name; or

         (c) a person or organization whose business or assets you have acquired; and

      (2)  containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products;

   b. includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in (1) and (2) above;

. . .

22.  **your work**:

   a. means:

      (1)  work or operations performed by you or on your behalf; and

      (2)  materials, parts or equipment furnished in connection with such work or operations;

                b. includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in (1) or (2) above.

Id. ¶ 14.

        An "Other Insurance" provision in the policies provides that the insurance "is excess insurance over any other insurance which would apply if this policy had not been written," and that when the insurance is "excess," State Farm will have "no duty . . . to defend any claim or suit that any other insurer has a duty to defend." Id. ¶ 15.

        Finally, the policy in effect from the period April 1, 2009 to April 1, 2010 contains an "Additional Insured" endorsement naming GP West as an additional insured under the policy, "but only to the extent that liability is imposed on [GP West] solely because of [AC Maui's] work performed for [GP West]." Id. ¶ 16. According to this endorsement, any insurance provided to GP West as an additional insured applies only with respect to a claim for which AC Maui is provided coverage under the policy. Id. Further, the insurance provided to GP West in the State Farm policy does not constitute primary insurance, meaning that any additional insurance carried by GP West will *not* be considered "noncontributory with respect to coverage provided to [AC Maui]." Id.

### b. Businessowners Coverage Form CMP-4100

The Businessowners Policies State Farm issued to AC
Maui for the period from April 1, 2013 to April 1, 2015, like
the Contractors Policies, provide that State Farm "will pay
those sums that the insured becomes legally obligated to pay as
damages because of 'bodily injury', 'property damage' or
'personal and advertising injury' to which this insurance
applies."  Id. ¶ 18.  The Businessowners Policies also outline
State Farm's right and duty to defend the insured against suits
seeking such damages.  Id.

Relevant here, "property damage" must be caused by an
"occurrence" that takes place in the policy's "coverage
territory" and during the policy period.  Id.  Additionally, the
policy requires that "[p]rior to the policy period, no
insured . . . and no 'employee' authorized by AC Maui to give or
receive notice of an 'occurrence' or claim, knew that the . . .
'property damage' had occurred, in whole or in part."  Id.
Further, "'property damage' which occurs during the policy
period . . . includes any continuation, change or resumption of
. . . 'property damage' after the end of the policy period."
Id.

The Businessowners Policies also include definitions
substantially similar to those outlined in the Contractors
Policies, discussed *supra*.  Id. ¶ 20.

- 13 -

### III.   Defendants' Tender to State Farm

GP West initially tendered defense and indemnification of the claims alleged in the underlying lawsuit to State Farm on July 14, 2014.  GPW's CSF ¶ 10.  State Farm denied tender on November 17, 2014, yet reserved the right to review any amended complaint in order to reevaluate its position.  Id. ¶ 11.  On March 2, 2015, GP West submitted the underlying first amended complaint to State Farm, thereby tendering defense and indemnification of the claims asserted therein.  Id. ¶ 12. State Farm again denied tender on June 12, 2015.  Id. ¶ 13. Finally, on December 16, 2015, State Farm agreed to participate in GP West's defense along with GP West's primary insurer, Nationwide, subject to a full reservation of rights.  Pl.'s CSF ¶ 21.

State Farm is also currently defending Defendant AC Maui pursuant to a reservation of rights.  Pl.'s MSJ at 23.

### STANDARD

### I.   Summary Judgment

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear

the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986); <u>see also</u> <u>Broussard v. Univ. of Cal. at Berkeley</u>, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." <u>Soremekun v. Thrifty Payless, Inc.</u>, 509 F.3d 978, 984 (9th Cir. 2007) (citing <u>Celotex</u>, 477 U.S. at 323); <u>see also</u> <u>Jespersen v. Harrah's Operating Co.</u>, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>, 475 U.S. 574, 586–87 (1986) (citation and internal quotation marks omitted); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law."

In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing

Anderson, 477 U.S. at 248).  When considering the evidence on a

motion for summary judgment, a court must draw all reasonable

inferences in favor of the nonmoving party.  Matsushita Elec.

Indus. Co., 475 U.S. at 587; see also Posey v. Lake Pend Oreille

Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating

that "the evidence of [the nonmovant] is to be believed, and all

justifiable inferences are to be drawn in his favor").

       "In insurance disputes, the insurer is only required

to establish the absence of a genuine issue of material fact

regarding the question of coverage pursuant to the plain

language of the insurance policies and the consequent

entitlement to the entry of judgment as a matter of law."

Burlington Ins. Co. v. United Coatings Mfg. Co., 518 F. Supp. 2d

1241, 1246 (D. Haw. 2007) (internal quotation marks and citation

omitted).

## II.  Diversity Jurisdiction

       The Court has diversity jurisdiction to hear this case

pursuant to 28 U.S.C. § 1332.  State Farm is an Illinois

corporation, Defendant GP West is a Georgia corporation, and

Defendant AC Maui is a Hawaii corporation.  Compl. ¶¶ 1-3.

Federal courts sitting in diversity apply state substantive law

and federal procedural law.  Hanna v. Plumer, 380 U.S. 460, 465

(1965); Erie v. Tompkins, 304 U.S. 64, 78 (1938).  A federal

court is bound by the decisions of a state's highest court when interpreting state law.  Arizona Elec. Power Coop., Inc. v. Berkeley, 59 F.3d 988, 991 (9th Cir. 1995).  However, "[i]n the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."  Id.

## DISCUSSION

### I.   Framework for Construing Insurance Contracts

Under Hawaii law, courts look to the plain language of the insurance policy to determine the scope of the insurer's duties.  United Coatings, 518 F. Supp. 2d at 1247; Burlington Ins. Co. v. Oceanic Design & Const. Inc., 383 F.3d 940, 945 (9th Cir. 2004) ("In Hawaii, the terms of an insurance policy are to be interpreted according to their plain, ordinary, and accepted sense in common speech."); see also Haw. Rev. Stat. § 431:10-237 ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, restricted, or modified by any rider, endorsement or application attached to and made a part of the policy.").

"In the context of insurance coverage disputes, [the court] must look to the language of the insurance policies themselves to ascertain whether coverage exists, consistent with

- 17 -

the insurer and insured's intent and expectations." <u>Hawaiian</u>
<u>Ins. & Guar. Co. v. Fin. Sec. Ins. Co.</u>, 72 Haw. 80, 87 (1991).
At the same time, insurance policies must be "in accordance with
the reasonable expectations of a layperson." <u>Hawaiian Isle</u>
<u>Adventures, Inc. v. N. Am. Capacity Ins. Co.</u>, 623 F. Supp. 2d
1189, 1194 (D. Haw. 2009).  "[B]ecause insurance contracts are
contracts of adhesion, they must be construed liberally in favor
of the insured, and any ambiguity must be resolved against the
insurer."  <u>Id.</u>  A contract term is considered ambiguous only if
it is "capable of being reasonably understood in more ways than
one."  <u>Cho Mark Oriental Food, Ltd. v. K & K Int'l</u>, 73 Haw. 509,
520 (1992).  "[T]he parties' disagreement as to the meaning of a
contract or its terms does not render clear language ambiguous."
<u>State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc.</u>, 90 Haw. 315,
324 (1999).

### a. Duty to Defend

The duty to defend under Hawaii insurance law is
broad, and "arises wherever there is the mere potential for
coverage." <u>Commerce & Indus. Ins. Co. v. Bank of Haw.</u>, 73 Haw.
322, 326 (1992).  Hawaii abides by the "complaint allegation
rule," whereby the determination of whether an insurer has a
duty to defend focuses on the claims and facts that are alleged.
<u>Burlington</u>, 383 F.3d at 944.  Thus, "[t]he duty to defend 'is
limited to situations where the pleadings have alleged claims

- 18 -

for relief which fall within the terms for coverage of the insurance contract.'" Id. (quoting Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co., 76 Haw. 166, 169 (1994)).  "Where pleadings fail to allege any basis for recovery within the coverage clause, the insurer has no obligation to defend." Hawaiian Holiday, 76 Haw. at 169 (quotation marks and citation omitted).  As the Hawaii Supreme Court has explained:

> The obligation to defend is broader than the duty to pay claims and arises wherever there is the mere *potential* for coverage.  In other words, the duty to defend rests primarily on the *possibility* that coverage exists.  This possibility may be remote but if it exists, the insurer owes the insured a defense.  All doubts as to whether a duty to defend exists are resolved against the insurer and in favor of the insured.

Tri-S Corp. v. W. World Ins. Co., 110 Haw. 473, 488 (2006) (emphasis in original); see also Burlington, 383 F.3d at 944 ("The duty to defend exists irrespective of whether the insurer is ultimately found not liable to the insured and is based on the possibility for coverage, even if remote, determined at the time suit is filed.").

On a motion for summary judgment regarding its duty to defend, the insurer bears the burden of proving there is "no genuine issue of material fact with respect to whether a *possibility* exists that the insured would incur liability for a claim covered by the policy." Tri-S, 110 Haw. at 488 (brackets

omitted, emphasis in original).  The insured's burden, on the

other hand, "is comparatively light, because it has merely to

prove that a *possibility* of coverage exists."  Id. (brackets

omitted, emphasis in original).

Finally, "where a suit raises a potential for

indemnification liability of the insurer to the insured, the

insurer has a duty to accept the defense of the entire suit even

though other claims of the complaint fall outside the policy's

coverage."  United Coatings, 518 F. Supp. 2d at 1248 (quoting

Hawaiian Holiday, 76 Haw. at 169) (brackets omitted).

### b. Duty to Indemnify

The insurer owes a duty to indemnify the insured "for

any loss or injury which comes within the coverage provisions of

the policy, provided it is not removed from coverage by a policy

exclusion."  State Farm Fire & Cas. Co. v. Cabalis, 80 F. Supp.

3d 1116, 1122 (D. Haw. 2015) (quoting Dairy Rd. Partners v.

Island Ins. Co., Ltd., 92 Haw. 398, 413 (2000)).  On a motion

for summary judgment regarding the issue of whether it has a

duty to indemnify the insured, the insurer is "*not* required to

disprove any *possibility* that its insured might be liable for a

claim asserted in the underlying lawsuits."  Dairy Rd. Partners,

92 Haw. at 413 (emphasis in original).  Here, the insurer must

only "establish the absence of a genuine issue of material fact

regarding the question of coverage pursuant to the plain

language of the insurance policies and the consequent

entitlement to the entry of judgment as a matter of law."  Id.

## II.   The Underlying Claims are Not Covered by the State Farm CGL Policies

### a. Contract and Contract-Based Tort Claims

The policies at issue provide coverage only for that

property damage caused by an "occurrence," which is defined, in

relevant part, as "an accident, including continuous or repeated

exposure to substantially the same general harmful conditions."

Pl.'s CSF ¶¶ 12, 14, 18, 20.  Under Hawaii law, "an occurrence

'cannot be the expected or reasonably foreseeable result of the

insured's own intentional acts or omissions.'"  Burlington, 383

F.3d at 948 (quoting Hawaiian Holiday, 76 Haw. at 234).

Courts applying Hawaii law have consistently held that

contract and contract-based tort claims are not covered under

commercial general liability ("CGL") policies.  See, e.g.

Burlington, 383 F.3d at 949 (citing WDC Venture v. Hartford

Accident and Indem. Co., 938 F. Supp. 671 (D. Haw. 1996); CIM

Ins. Corp. v. Masamitsu, 74 F. Supp. 2d 975 (D. Haw. 1999); and

CIM Ins. Corp. v. Midpac Auto Center, Inc., 108 F. Supp. 2d 1092

(D. Haw. 2000)) ("[O]ur holding is consistent with the line of

cases from the District of Hawaii that hold that contract and

contract-based tort claims are not within the scope of CGL

policies under Hawaii law."); United Coatings, 518 F. Supp. 2d

at 1250 ("Contract-based claims – including claims sounding in
tort which are predicated upon, stemming directly from, or
derivative of, [the insured's] contracts, contracts of sales,
and warranties – are not covered under the CGL Policy.").  The
Ninth Circuit has explained the rationale behind this rule in
the construction insurance context as such:

> General liability policies . . . are not
> designed to provide contractors and
> developers with coverage against claims
> their work is inferior or defective.  The
> risk of replacing and repairing defective
> materials or poor workmanship has generally
> been considered a commercial risk which is
> not passed on to the liability insurer.
> Rather liability coverage comes into play
> when the insured's defective materials or
> work cause injury to property other than the
> insured's own work or products.

Burlington, 383 F.3d at 948 (quoting Anthem Elec., Inc. v. Pac.
Emp'rs Ins. Co., 302 F.3d 1049, 1057 (9th Cir. 2002)).

Defendants argue that the last sentence of this quote
indicates that the Ninth Circuit has recognized an exception for
"property other than the insured's own work or products," for
which a CGL policy does provide coverage.  GPW's MSJ at 8.
Defendants contend that this exception suggests a possibility of
coverage for damage to "other property" allegedly caused by the
defective HVAC system, including the development of mold,
collapse of the clinic's sub-ceiling, rust and corrosion to

metal doorframes and fixtures, and damage and electrical short-
outs to light fixtures.  Id. at 8-10; Underlying Compl. ¶ 43.

Defendants further assert that the present case is
more akin to Ninth Circuit case Anthem than to Ninth Circuit
case Burlington.  GPW's Reply at 1-2, 5.  In the former, the
court found a possibility of coverage for damage to "other
property," Anthem, 302 F.3d at 1055; in the latter, damage was
limited to property worked on by the insurer, and the court
found no possibility of coverage, Burlington, 383 F.3d at 948.
Defendants argue that Burlington is distinguishable because it
did not involve damage to property other than the insured's
work, as is alleged in this case; therefore, this Court should
instead rely on Anthem.  GPW's Reply at 1-2, 5.

However, Anthem involved the application of California
law, and this Court, sitting in diversity, is bound to follow
the law of the State of Hawaii.  In fact, the Burlington court
recognized as much when the defendant in that case attempted to
rely on Anthem to argue that plaintiff insurer was obligated to
provide a defense and indemnity for contract and contract-based
tort claims.  Burlington, 383 F.3d at 951 ("We therefore
conclude that changes in California law do not affect our
application of Hawaii law.").

Furthermore, in drawing a distinction between
California and Hawaii law, the Burlington court suggested that

damage to "other property" might not be covered if claims for that damage are premised on the underlying contract between the parties.  Noting that its holding was consistent with a line of District of Hawaii cases holding that contract and contract-based tort claims were not within the scope of various CGL policies under Hawaii law, the court observed, "Unlike California however, Hawaii has not rejected the distinction between contract and tort-based claims . . . . To the contrary, the Hawaii Supreme Court has stated that allowing tort recovery based on a breach of contract 'unnecessarily blurs the distinction between – and undermines the discrete theories of recovery relevant to – tort and contract law.'"  Id. at 949, 951.

Relying on this and other such language in Burlington, courts in this district have declined to find a possibility of coverage for damage to "other property" unless such damage is "based on an independent tort claim under state law." United Coatings, 518 F. Supp. 2d at 1251 (finding no coverage under a CGL policy for damage to exterior walls, windows, and parking lots caused by a paint product sold by the insured, as all underlying claims arose from the parties' contractual relationship); Illinois Nat. Ins. Co. v. Nordic PCL Const., Inc., 870 F. Supp. 2d 1015, 1024, 1031 (D. Haw. 2012) (finding that underlying claims, including those for "significant leaks"

- 24 -

that had allegedly damaged interior fixtures and equipment,
arose from the parties' various contractual relationships and
therefore did not allege covered "occurrences").

　　　　The Hawaii Intermediate Court of Appeals ("ICA") has
also held that faulty construction work giving rise to "other
property" damage does not constitute an "occurrence" under a CGL
policy.  Group Builders, Inc. v. Admiral Ins. Co., 123 Haw. 142,
148-149 (2010).  In Group Builders, a subcontractor was hired to
install insulation, sealant, fireproofing, and metal wall
framing to a hotel that was under construction.  Id. at 143.
After construction on the hotel was complete and the hotel had
been open to the general public for about a year, the guest
rooms were discovered to have extensive mold growth.  Id. at
144.  Thereafter, many of the guest rooms were closed and an
investigation revealed that the subcontractor's work, along with
the work of other defendants, "substantially contributed to or
caused the mold growth."  Id.  Analyzing the subcontractor's CGL
policy, the ICA found that the mold damage and resulting loss of
use of the hotel qualified as "property damage" under the terms
of the policy.  Id. at 145.  The court then turned to the
question "whether alleged faulty construction work, giving rise
to contractual claims, constitutes an 'occurrence' under a CGL
policy."  Id. at 145-46.

Relying heavily on <u>Burlington</u>, the ICA held that "under Hawai'i law, construction defect claims do not constitute an 'occurrence' under a CGL policy." <u>Id.</u> at 148.  It further held that "breach of contract claims based on allegations of shoddy performance are not covered under CGL policies," and that "tort-based claims, derivative of these breach of contract claims, are also not covered under CGL policies." <u>Id.</u> at 148-49.  The court thereby affirmed the lower court's holding that the insurer had no duty to indemnify the subcontractor for claims related to the mold damage and loss of use of the hotel. <u>Id.</u> at 149.

The parties in this case heavily dispute whether the Court is bound to follow <u>Group Builders</u>.  For their part, Defendants argue that the Hawaii State Legislature's passage of Act 83 impacts the continued viability of <u>Group Builders</u>.  GPW's MSJ at 18-21; GPW's Reply at 9-11.  House Bill No. 924, which the legislature eventually passed as Act 83, criticizes <u>Group Builders</u> as "creat[ing] a public policy crisis that only the State is in a position to remedy." H.B. 924 § 1.  The bill also states that <u>Group Builders</u> "creates uncertainty in the construction industry, and invalidates insurance coverage that was understood to exist and that was already paid for by construction professionals." <u>Id.</u>  As such, the text of the statute that was enacted in 2011 provides:

> For purposes of a liability insurance policy
> that covers occurrences of damage or injury
> during the policy period and that insures a
> construction professional for liability
> arising from construction-related work, the
> meaning of the term 'occurrence' shall be
> construed in accordance with the law as it
> existed at the time the insurance policy was
> issued.

Haw. Rev. Stat. § 431:1-217(a) (2011).

While it is true that the legislature strongly denounced Group Builders in House Bill No. 924 (which ultimately resulted in Act 83), it is also true that no court has criticized or overturned Group Builders – or Burlington, the case upon which Group Builders so heavily relied – in the six years since the decision was rendered and the five years since the enactment of Act 83. Additionally, the District of Hawaii has already recognized that nothing in Act 83 purports to nullify any of the decisions preceding Group Builders, and that Group Builders is consistent with prior case law.[1] Nordic, 870 F. Supp. 2d at 1032; Nautilus Ins. Co. v. 3 Builders, Inc., 955

---

[1] Defendants are correct that this Court previously commented on the Hawaii State Legislature's "excoriation" of Group Builders, as well as questioned the proposition that the case did not change anything about Hawaii insurance law. Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Simpson Mfg. Co., 829 F. Supp. 2d 914, 922 n.13, 928 (D. Haw. 2011). However, Simpson did not question the merits of Group Builders itself, and further noted that the state judiciary had yet to address the continued viability of the case in light of Act 83. Id. at 928. As noted already, no Hawaii court has overturned the decision in Group Builders in the six years since the case was decided.

F. Supp. 2d 1121, 1135-36.  To the extent that Group Builders, as a result of Act 83, no longer represents appropriate case law for policies issued prior to that decision, the case still serves as helpful insight into how Hawaii courts will construe and apply the multiple cases, including Burlington, upon which Group Builders relies.  Those cases remain good law and stipulate the rule that CGL policies do not provide coverage for contract or contract-based tort claims.

At a minimum, taking Act 83's directive into account that "occurrence" should be construed in accordance with the law at the time a policy is issued, each of the insurance policies in the instant case post-dates Burlington.  Thus, an "occurrence" under the State Farm policies is properly interpreted to exclude coverage for contract and contract-based tort claims.

Defendants attempt to circumvent Burlington and rely on three Hawaii Supreme Court cases for the proposition that damage to "other property" should be covered.  GPW's Reply at 2-5 (citing Sturla, Inc. v. Fireman's Fund Ins. Co., 67 Haw. 203 (1984); Hurtig v. Terminix Wood Treating & Contracting Co., Ltd., 67 Haw. 480 (1984); and Sentinel Ins. Co. v. First Ins. Co. of Hawai'i, Ltd., 76 Haw. 277 (1994)).  They argue that since Burlington is distinguishable because it does not deal with "other property" damage, the Court must follow Hawaii law –

not the law as articulated by the Ninth Circuit in <u>Burlington</u>,
which was a case based on diversity jurisdiction.  <u>Id.</u> at 1-2.
However, this district recently rejected a similar argument in
<u>Nordic</u>.  There, the court stated:

> The position advanced by [defendants] runs
> afoul of hierarchy and chronology.  With
> respect to hierarchy, this court is clearly
> bound by <u>Burlington</u>, in which the Ninth
> Circuit construed Hawaii law as not
> providing for insurance coverage for
> contract-related claims . . . The "law of
> the circuit" rule is "the rule that a
> published decision of this court constitutes
> binding authority which must be followed
> unless and until overruled by a body
> competent to do so" . . . . This court is
> obligated to follow the Ninth Circuit's
> decision in <u>Burlington</u> and may not choose to
> ignore the law of the circuit.
>
> With respect to chronology, [defendants] are
> relying on Hawaii Supreme Court cases that
> preceded <u>Burlington</u> and <u>Group Builders</u>.
> Thus, it is fair for this court to assume
> that the Ninth Circuit and the ICA took
> those Hawaii Supreme Court cases into
> account.

<u>Nordic</u>, 870 F. Supp. 2d at 1030 (citations and some quotation
marks omitted).  For the same reasons, this Court is bound to
follow <u>Burlington</u> in the present case.[2]

---

[2] Defendants also contend that the damage to "other property"
alleged in the underlying complaint could include damage to
equipment not owned by the underlying plaintiffs or to a
building other than the MVC Building.  GPW's MSJ at 15.  They
argue that these earlier Hawaii Supreme Court cases support the
notion that coverage exists for third party property damage, and
furthermore, that regardless of the fact that the underlying
(continued . . .)

Following the law of Burlington and the other District
of Hawaii decisions that have adhered to it, this Court finds as
a matter of law that the underlying plaintiffs' claims for
breach of contract, breach of express warranty, and breach of
implied warranties are all contract-based claims and are
therefore not covered by State Farm's CGL policies.

As to the underlying claims for negligence and
intentional or negligent misrepresentation, the relevant inquiry
is whether these claims are "premised on a contractual
relationship or are based on an independent tort claim under
state law." United Coatings, 518 F. Supp. 2d at 1251.  Turning
first to the latter, the underlying complaint states that the
underlying plaintiffs relied to their detriment on Defendants'
representations regarding the HVAC system when plaintiffs agreed
to install the system in the MVC Building and later allow
Defendants to attempt to make costly repairs to it.  Underlying

---

complaint does not allege such damage, Defendants need only
raise a possibility of coverage on a motion for summary
judgment.  Id.  However, while the duty to defend is broad, the
Court will not find such a duty based on mere conjecture about
the claims that could be brought.  Because the underlying
complaint asserts no claims for third party property damage, the
Court will not find a duty to defend on this basis.  See
Hawaiian Holiday, 76 Haw. at 169 ("The duty to defend is limited
to situations where the pleadings have alleged claims for relief
which fall within the terms for coverage of the insurance
contract.  Where pleadings fail to allege any basis for recovery
within the coverage clause, the insurer has no obligation to
defend.")(internal quotation marks omitted).

Compl. ¶ 69.  This claim clearly relies upon the existence of the underlying contract or warranties, and is therefore not covered by the CGL policy.  See United Coatings, 518 F. Supp. 2d at 1251 ("Because the AOAO's claim for negligent misrepresentation depends upon the existence of United Coatings' underlying contract, contract of sale, or warranties, the claim for negligent misrepresentation is contract-based.").

     With regards to the underlying plaintiffs' negligence claim, the underlying complaint asserts, "Defendants had a duty to perform all work and provide all services in accordance with the state and local statutes, ordinances, and regulations . . . . Defendants were negligent in failing to perform their work in accordance with the law, including requirements found in county ordinances, including the Maui County Building Code, as well as published state regulations . . . ."  Underlying Compl. ¶¶ 61-62.

     Defendants argue that Hawaii recognizes an independent tort arising from an insured's building code violations, and that the underlying negligence claim is therefore covered by the CGL policy.  GPW's Reply at 6-9.  In support of this proposition, Defendants rely on Hawaii Supreme Court case Association of Apartment Owners of Newtown Meadows v. Venture 15, Inc., 115 Haw. 232 (2007), which involved a lawsuit against a developer, general contractor, and several other defendants

for the alleged defective construction of a condominium project. Id. at 238.  The court in that case first held that those of the plaintiff's negligence claims that were based on violations of contract specifications were barred by the economic loss rule. Id. at 295.  However, it then carved out an exception to the economic loss rule for negligence claims based on violations of building codes.  Id.  The court quoted the South Carolina Supreme Court case upon which it relied, stating, "[A] violation of a building code violates a legal duty for which a builder can be held liable in tort for proximately caused losses . . . . [A] cause of action in negligence will be available where a builder has violated a legal duty, no matter the type of resulting damage."  Kennedy v. Columbia Lumber & Manufacturing Co., 299 S.C. 335, 346-47 (1989).

As an initial matter, the Court notes that Defendants raise this legal theory for the first time in their Reply in support of their Motion for Partial Summary Judgment.  As this district's Local Rules dictate, "A reply must respond only to arguments raised in the opposition.  Any argument raised for the first time in the reply shall be disregarded."  L.R. 7.4.  Thus, the Court rejects Defendants' argument on this basis alone.

Furthermore, Newtown Meadows provides little guidance to this Court because its holding was limited to allowing a homeowner to pursue a negligence claim against a builder where

the builder allegedly violated an applicable building code. Newtown Meadows, 115 Haw. at 295.  The same is true of Kennedy, the case upon which Newtown Meadows relied.  Sapp v. Ford Motor Co., 386 S.C. 143, 150 (2009) ("We emphasize the exception announced in Kennedy is a very narrow one, applicable only in the residential real estate construction context.").  Here, the underlying contract provides for the construction of a commercial building, and the parties have failed to identify any Hawaii case that extends this exception to the commercial real estate construction context.

Additionally, Newtown Meadows was specifically concerned with stating an exception to the economic loss rule. Newtown Meadows, 115 Haw. at 295; see also TIG Ins. Co. v. Haseko Homes, Inc., Civ. Nos. 10-00107 DAE-KSC, 10-00146 DAE-KSC, 10-00575 DAE-KSC, 2011 WL 264315, at *11 n.12 (D. Haw. Jan. 26, 2011) ("The Hawaii Supreme Court decided Newtown Meadows in the context of the economic loss rule, and not for insurance coverage purposes.").  The economic loss rule holds that "a cause of action in products liability will not lie where a plaintiff alleges a purely economic loss stemming from injury only to the product itself."  Newtown Meadows, 115 Haw. at 285 (citation omitted).  This rule is clearly inapplicable here, where the underlying complaint alleges physical damage to both the HVAC system and parts of the MVC Building.

The relevant inquiry with regards to the underlying plaintiffs' negligence claim remains "whether the *genesis* or *origin* of the underlying claim[] . . . is premised on a contractual relationship or is based on an independent tort claim under state law." United Coatings, 518 F. Supp. 2d at 1250-51 (emphasis in original).  Here, any duty that Defendants had to "perform all work and provide all services in accordance with the state and local statutes, ordinances, and regulations," arose out of the parties' contract and subcontract to construct the MVC Building and install the HVAC system.

For all of the foregoing reasons, the Court finds as a matter of law that none of the underlying claims arise from a covered "occurrence"; consequently, none of the claims are covered by State Farm's CGL policies.

### b. Products-Completed Operations Coverage

Defendants next argue that the State Farm policies provide additional coverage for "products-completed operations," and that this is a "clear indication that construction defects are indeed intended to be covered."[3]  GPW'S MSJ at 25.

---

[3] Defendants also seek to distinguish the instant case from Group Builders and Burlington, arguing that the policies in the latter two cases did not include products-completed operations coverage.  GPW's MSJ at 23.  State Farm counters that Defendants offer no support for this contention, and that products-completed operations coverage is actually quite common in standard CGL policies.  Pl.'s Reply at 14 n.4.  While it is

(continued . . .)

"Products-completed operations hazard" is defined in the Contractor's Policies to "include[] all bodily injury and property damage arising out of your product or your work except products that are still in your physical possession or work that has not yet been completed or abandoned.  The bodily injury or property damage must occur away from premises you own or rent unless your business includes the selling, handling or distribution of your product for consumption on premises you own or rent."  Pl.'s CSF ¶ 14.  The definition provided in the Businessowners Policies is substantially similar.  Id. ¶ 20.

As State Farm and Defendants agree, "The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained."  J.Z.G. Res. v. King, 987 F.2d 98, 103 (2d Cir. 1993) (quoting Roger C. Henderson, Insurance Protection for Products Liability and Completed Operations – What Every Lawyer Should Know, 50 Neb. L. Rev. 415, 441 (1971)).

---

unclear from the briefing in Burlington whether the policy at issue in that case contained such coverage, Plaintiffs-Appellants' Opening Brief in Group Builders discusses the products-completed operations coverage in the relevant policy in that case.  Plaintiffs-Appellants' Opening Brief at 10-11, Group Builders, 123 Haw. 142 (2010) (No. 29402).  In any event, the Court finds that the policies at issue in this case do not create a separate category of coverage for products-completed operations.

Defendants' argument is that the policies provide *separate* coverage for products-completed operations, and that "post-completion property damage caused by faulty workmanship," such as the property damage to the MVC Building, therefore arises from an "occurrence."  GPW's MSJ at 26-27.  In support of its argument that the products-completed operations hazard constitutes a separate class of coverage, Defendants note that such coverage is listed on the policies' Declarations Page separate from the "Business Liability" coverage, which lists an insurance limit of $1,000,000.  GPW's CSF ¶ 8.  Indeed, a separate line item lists "Products-Completed Operations (PCO) Aggregate" with an insurance limit of $2,000,000.  Id.

Defendants also contend the "Limits of Insurance" portion of "Section II" of the policies confirms the existence of a separate products-completed operations coverage.  GPW's MSJ at 24.  That language states, "The most we will pay for . . . injury or damage under the products-completed operations hazard arising from all occurrences during the policy period is the Products-Completed Operations (PCO) Aggregate limit shown in the Declarations . . . ."  GPW's CSF ¶ 9.  Finally, Defendants point out that one of the exclusions for property damage in the CGL policies lists "property damage included in the products-completed operations hazard" as an exception to that exclusion, which in turn means that such damage is covered under the

policy.  All of this goes to prove, Defendants assert, that "completed operations is additional coverage purchased by the insured to cover risks after the insured completes the work." GPW's Reply at 12.

State Farm counters that this argument attempts to circumvent the threshold requirement that property damage be the result of an "occurrence" in order for coverage to apply.  Pl.'s MSJ at 13-14.  It argues that no separate insuring language applies to the products-completed operations hazard, and that all liability coverage for property damage is subject to the insuring clause in Section II, which states, "This insurance applies only . . . to . . . property damage caused by an occurrence which takes place in the coverage territory during the policy period."  Pl.'s CSF ¶ 12.  It further argues that the Declarations Page fails to list a separate premium for completed operations coverage, indicating that no "separate" form of coverage actually exists.  Pl.'s MSJ at 14.  Defendants respond to this argument by pointing out that the Declarations Page lists only one premium that applies to the entire policy, and that there is no indication that products-completed operations coverage requires a separate premium.  GPW's Reply at 12 n.9.

The Court finds that even if the policies include coverage for products-completed operations, this does not obviate the requirement that coverage for such claims arise from

an "occurrence." Faced with substantially similar insuring language as that in the instant policies, another court in this district undertook a lengthy analysis of the effect of products-completed operations hazard provisions in a CGL policy in Illinois National Insurance Co. v. Nordic PCL Construction, Inc., Civ. No. 11-00515 SOM-KSC, 2012 WL 5386609 (D. Haw. Oct. 31, 2012) ("Nordic II"). Like the policies at issue here, the CGL policy in Nordic II included a separate insurance limit for products-completed operations, and in fact, the parties to the suit did not dispute that the insured had paid an additional premium for the coverage. Id. at *5, *12. Also like the policies here, there was no separate insuring language defining the coverage for products-completed operations. Id. at **5-6. The court thus found that the only coverage provision that could apply was that which applied to liability for bodily injury and property damage. Id. at *6. This coverage language stated that the insurer would be liable only for that property damage caused by an "occurrence." Id.

The court then quoted from an Iowa Supreme Court case that explained how products-completed operations coverage operates in a CGL policy:

> Before proceeding to our analysis of whether there was coverage, we think it would be helpful to explain how the PCOH [products-completed operations hazard] provision fits into a CGL policy. A CGL policy, like every

> other policy, has an insuring clause under
> which the insurer agrees to pay sums that
> the insured becomes legally obligated to pay
> because of property damages caused by an
> occurrence. The CGL policy also has
> exclusions that take away some of this
> coverage. The PCOH provision is an exception
> to these exclusions. Or, stated in another
> way, the PCOH provision is simply a category
> of losses that are covered even though these
> losses might otherwise be excluded. Viewed
> in this light, the PCOH provision does not
> create a separate category of coverage.
> Rather, any loss falling within the PCOH
> provision must still meet all the
> requirements of the policy, like any other
> loss, except the exclusion from which the
> losses are excepted.

Pursell Constr., Inc. v. Hawkeye-Security Ins. Co., 596 N.W.2d

67, 69 (Iowa 1999).

Stating that "it is a basic principle of policy

construction that one starts by determining whether a claim

falls within a coverage provision," the court found that the

products-completed operations analysis would end "as soon as the

court determines that the absence of an 'occurrence' precludes

coverage." Nordic II, 2012 WL 5386609 at **6-8.

Because this Court finds that none of the claims in

the underlying complaint arise from a covered "occurrence," the

Court also finds as a matter of law that the products-completed

operations hazard provisions do not cover the alleged damages.

### c. Punitive Damages

Under Hawaii law, "[c]overage under any policy of insurance issued in this State shall not be construed to provide coverage for punitive or exemplary damages unless specifically included."  Haw. Rev. Stat. § 431:10-240.  None of the policies at issue provides for punitive or exemplary damages.  GPW's MSJ at 33.  This Court therefore finds as a matter of law that State Farm is not liable for any such damages that might be awarded in the underlying lawsuits.

For all of the foregoing reasons, the Court GRANTS State Farm's Motion for Summary Judgment with respect to its duties to defend and indemnify Defendants in the underlying lawsuit, and thereby DENIES Defendants' Cross-Motion for Partial Summary Judgment with respect to State Farm's duty to defend.

### III.   State Farm Did Not Violate the Implied Covenant of Good Faith and Fair Dealing

GP West asserts a Counterclaim against State Farm for breach of the covenant of good faith and fair dealing arising from State Farm's rejection of GP West's tender based on the "Other Insurance" provision in Nationwide's policy.  GPW's MSJ at 33-34.  Nationwide is GP West's primary insurer.  Pl.'s CSF ¶ 22.

Hawaii courts have recognized that existing in every contract is an "implied covenant of good faith and fair dealing

that neither party will do anything that will deprive the other
of the benefits of the agreement." Best Place, Inc. v. Penn Am.
Ins. Co., 82 Haw. 120, 123-24 (1996).  Furthermore, "there is a
legal duty, implied in . . . first- and third-party insurance
contract[s], that the insurer must act in good faith in dealing
with its insured, and a breach of that duty of good faith gives
rise to an independent tort cause of action." Id. at 132.

In its Counterclaim, GP West relies on Nautilus
Insurance Company v. Lexington Insurance Company, 132 Haw. 283
(2014), which states:

> [W]e hold that a primary insurer may not
> look to another insurance policy in
> disclaiming its duty to defend. If a
> primary insurer is tendered a defense, and
> believes that it is actually an excess
> insurer or otherwise has no duty to defend
> by operation of its "other insurance"
> clause, then that primary insurer must still
> defend in the action.

Id. at 295.  Because State Farm looked to Nationwide's "Other
Insurance" provision in denying tender of the underlying claim,
GP West argues, it acted in violation of Nautilus and therefore
breached the covenant of good faith and fair dealing.  GPW'S MSJ
at 33-34.

However, as State Farm correctly points out, Nautilus
is distinguishable from the present case because State Farm is
not GP West's primary insurer.  Pl.'s MSJ at 39.  In holding
that a primary insurer cannot look to another insurance policy

in disclaiming its duty to defend, <u>Nautilus</u> was referring to insurance providers such as Nationwide, which provides primary insurance coverage to GP West.  The holding of <u>Nautilus</u> was not speaking about primary insurers in the general sense, but rather, in the specific sense.  In other words, State Farm does provide primary insurance, just not to GP West.  This is evidenced by the endorsement naming GP West as an additional insured in the policy for the period from April 1, 2009 to April 1, 2010.  Pl.'s CSF ¶ 16.  This endorsement states that the State Farm policy would only provide primary insurance coverage to GP West if the "Primary Insurance" box was marked with an "X."  <u>Id.</u>  As this box was left unmarked, State Farm was never GP West's primary insurer.

Construing Hawaii law, this district has previously stated that an insurer that relies on governing law in denying a claim cannot be said to have acted in bad faith.  <u>Illinois Nat. Ins. Co. v. Nordic PCL Const., Inc.</u>, Civ. No. 11-00515 SOM-KSC, 2013 WL 5739639, at *8 (D. Haw. Oct. 22, 2013).  Additionally, "in determining whether an insurer acted in bad faith by denying coverage to an insured under a policy, 'conduct based on an interpretation of the insurance contract that is reasonable does not constitute bad faith.'"  <u>Allen v. Scottsdale Ins. Co.</u>, 307 F. Supp. 2d 1170, 1180 (D. Haw. 2004) (quoting <u>Best Place</u>, 82 Haw. at 133).

In its denial of GP West's tender on November 17, 2014, State Farm noted that "[t]here is a question whether the claimant alleges an occurrence as defined by the policy." Eyerly Decl. Ex. E, ECF No. 37-6.  This statement clearly implicated the issues related to contract and contract-based tort claims raised in Burlington, which constituted part of the governing case law at the time of GP West's tender. Additionally, in its denial of coverage State Farm laid out several exclusions that it believed precluded such coverage, citing to both the policies' definitions and other insuring language.  Id.  In its June 12, 2015 denial of tender, State Farm construed the endorsement naming GP West as an additional insured as indicating that State Farm was an excess insurer over GP West's primary insurer, Nationwide; therefore, as State Farm explained in the letter, State Farm believed it had no duty to defend GP West at that time.  Eyerly Decl. Ex. G, ECF No. 37-8. Clearly, State Farm's denial of tender was grounded in both governing law and a reasonable interpretation of the policies at issue.

For these reasons, the Court finds as a matter of law that State Farm did not breach the covenant of good faith and fair dealing when it denied GP West's tender of the underlying lawsuit, and therefore GRANTS State Farm's Motion for Summary Judgment on GP West's Counterclaim.

- 43 -

## CONCLUSION

For the foregoing reasons, the Court GRANTS State Farm's Motion for Summary Judgment and DENIES GP West's Cross-Motion for Partial Summary Judgment, to which AC Maui has filed a Joinder.  Specifically, the Court finds as a matter of law that State Farm has no duty to defend or indemnify Defendants for claims asserted in the underlying complaint, as such claims arise from the contractual relationship between Defendants and the underlying plaintiffs.  Additionally, the Court finds as a matter of law that State Farm did not breach the covenant of good faith and fair dealing by initially denying GP West's tender to State Farm of defense of the underlying claims.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, June 7, 2016.

_Alan C. Kay_
Alan C. Kay
Sr. United States District Judge

State Farm Fire and Casualty Company v. GP West, Inc., Civ. No. 15-00101 ACK-KSC, Order Granting Plaintiff's Motion for Summary Judgment and Denying Defendants' Cross-Motion for Partial Summary Judgment.